City of Ashtabula, Appellee, v. Kovacs, Appellant.

[Cite as City of Ashtabula v. Kovacs, 8 Ohio App. 2d 320.]

(No. 592—Decided November 23, 1965.)

*Mr. James C. Warren,* for appellee.
*Mr. John P. Mahoney,* for appellant.

Johnson, P. J. This is an appeal on questions of law from a judgment of the Municipal Court of the city of Ashtabula, wherein, on trial to the court, the defendant, appellant herein, was found guilty of violating Section 513 of the General Ordinances of the city of Ashtabula.

The pertinent facts are as follows:

Defendant, a conductor for the New York Central Railroad, was in charge of the operation of a freight train proceeding from Ashtabula Harbor to the West Yard of the railroad in the city of Ashtabula. While proceeding southerly and then westerly from the Harbor Yard, and as it passed through the city of Ashtabula, the train, consisting of over one hundred loaded cars "went into emergency," that is, a mechanical fail-

ure caused the brakes on the several cars of the train to engage so that it came to a halt. In so doing, it blocked all vehicular traffic on West Avenue and West Thirtieth Street. The emergency occurred shortly before 3 a. m. on October 14, 1964.

Upon being confronted with the emergency situation, and upon instructions from the West Yard Master to break the train so as not to block the public highways, the defendant, who was riding at the head of the train, proceeded to make a visual inspection of the train cars as he proceeded toward the rear of the train in an attempt to ascertain the cause of the emergency.

Upon reaching the West Thirtieth Street roadway, he proceeded to make a cut of cars so as to clear that crossing. He closed an angle-cock so that the air could be pumped into the air lines from the engine to the point where the cut had been made. When sufficient pressure had been pumped, the engineer was signalled to back up the train so that the pin could be pulled in the coupling. When this had been completed, the part of the train which had been uncoupled was pulled into the West Yard and the crossings in question were cleared.

The defendant, after having uncoupled the train, rode the rear car into the West Yard, where he was met by the arresting officers and cited for violation of Section 513 of the General Ordinances of the city of Ashtabula.

Subsequent to this citation, defendant returned with an engineer to the remaining cars yet standing on the main line and discovered that a car approximately twenty cars north of the ones he had uncoupled had a broken knuckle, which defect had caused the entire train to go into emergency. The remainder of the cars, after repairs had been made, were pulled into the West Yard.

A warrant for the arrest of the defendant was issued on October 14, 1964, by the Ashtabula Municipal Court and was based on the following affidavit signed by Gordon Arvidson, of the City of Ashtabula Police Department:

"Before me, Nels G. Orn, Clerk of the Ashtabula Municipal Court, personally came Gordon Arvidson, who being duly sworn according to law, deposeth and saith that on or about October 14, 1964, in the city and county aforesaid, one Eugene Frances Kovacs being a conductor and employee of the New York Central System, which operates a railway, then and there

unlawfully did suffer, allow or permit a locomotive, car or train of cars to stand on or across public streets, to-wit: West Avenue and West 30th Street, such streets then and there being open and in use for public travel, for a longer period than five minutes at one time, to-wit: for a period of ten (10) minutes, contrary to the form of an Ordinance Sec. 513 of said city in such case made and provided.''

Though there is some inconsistency in the testimony, the bill of exceptions makes it clear that the amount of time that the public highways were blocked by the train was in excess of ten minutes, which period was considerably longer than the five minute period permitted under the ordinance.

Defendant assigns as error that:

''Section 513 of the General Ordinances of the city of Ashtabula, Ohio, is invalid and unconstitutional because it is an arbitrary and unreasonable exercise of police power.''

Section 513 of the General Ordinances of the city of Ashtabula reads as follows:

''It shall be unlawful for any railway company, conductor, engineer, fireman, or other employee of any railway company, or other employee of any person or corporation operating any railway to suffer, allow or permit any locomotive, car or train of cars to stand on or across any public street, land or alley, the same being open and in use for public travel, for a longer period than five minutes at one time; and upon conviction thereof shall be fined in any sum not less than five dollars nor more than fifty dollars and costs of prosecution.''

It would appear that the instant questions have been consider by the Supreme Court of Ohio in the case of *City of Cincinnati* v. *Luckey,* 153 Ohio St. 247, wherein the ordinance of the city of Cincinnati was found to be an arbitrary and unreasonable exercise of the police power. The ordinance therein construed read as follows:

'' 'Section 410-8. Blocking Street Crossings. It shall be unlawful for any railroad company to operate its locomotives, cars or trains of cars in such manner as to block a street crossing for a period of more than ten minutes. Violations of this section shall be punished according to the penalties of Section 410-13.' ''

Though it be conceded that the ordinances are not identical in wording, the fatal defect found in the Cincinnati ordinance is readily apparent in the ordinance here under consideration. That is to say, that in the instant case no provision is made in the time limitation therein imposed for any contingency which might arise, which is beyond the control of the operators of the train.

The city would argue that the Ashtabula ordinance can be distinguished in that the inclusion of the words "to suffer, allow or permit any locomotive" to stand for more than five minutes is a sufficient escape clause as to cover contingencies of an emergency nature or such as would be beyond the control of the operators of the train.

With such contention we cannot agree. The limitation as to time is absolute. A prima facie case is made out when the prosecution has shown that the time limitation has been exceeded. Extenuating circumstances are not a matter for the trier of facts to consider. Were the ordinance to read that the cars were not to stand "unnecessarily" on or across any public street, such argument would have merit. Such is the wording to be found in Section 5589.21, Revised Code:

"No person or corporation, conductor of a train of railroad cars, or other agent or servant of a railroad company, shall obstruct, unnecessarily, a public road or highway of this state, by permitting a railroad car or locomotive to remain upon or across it for longer than five minutes, or permit timber, lumber, wood, or other obstructions to remain upon or across it, to the hindrance or inconvenience of travelers or a person passing along or upon such road or highway."

The legislative authority of a city can, in the exercise of its police powers, adopt regulations for the use of its street rights of way by railroads. Its responsibility for the orderly movement of ordinary traffic is well recognized. Its duty to assure the movement of emergency vehicles is paramount, to protect the health, safety and welfare of all its citizens. Unreasonable and unnecessary interference with the use of the public highways by railroads or any other persons cannot be considered. But the application of that police power against the rights of others in terms so absolute as to time, with no

other standard of conduct, constitutes an unreasonable and arbitrary exercise of the police power.

The city would strongly urge that to hold this ordinance invalid denies to its legislative authority the right to reasonably control the use of its street rights of way by the railroads. This contention was answered by the Supreme Court in *City of Cincinnati* v. *Luckey,* 153 Ohio St. 247, at page 249:

"The municipality insists that the effect of holding this ordinance invalid is to give railroads a preferred right in city streets and to deny to cities the authority to adopt reasonable regulations for the use of its streets by railroads engaged in interstate commerce. This is not the view of this court or the contention of the defendants. On the contrary, in the third paragraph of the syllabus in the case of *Pittsburgh, Ft. Wayne & Chicago Ry. Co.* v. *Maurer,* 21 Ohio St. 421, this court held:

" '3. The right of a railroad company to enjoy the use of its road at the crossing of a common highway, and the right of the traveling public to use the highway, are co-ordinate and equal. Reasonable care and prudence must be exercised by each, in the use of the crossing, so as not to interfere unnecessarily with the other.' "

The defendant has assigned additional errors, consideration of which is not necessary to a final determination of this cause.

We hold that Section 513 of the General Ordinances of the city of Ashtabula is invalid, and that the conviction of the defendant based thereon is void and of no force and effect. The judgment is reversed, and the defendant is ordered discharged.

*Judgement reversed.*

JONES and LYNCH, JJ., concur.